IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| JACOB HARRISON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 7142-ML |
| | ) | |
| ROSEANN DIXON, individually and as | ) | |
| Administratrix of the Estates of Remell | ) | |
| Harrison and Clarence Harrison | ) | |
| a/k/a Clarence Harrison, Jr., | ) | |
| DELAWARE INVESTMENT SERVICES, | ) | |
| INC., a Delaware corporation, NIEAISHIA | ) | |
| N. DOLLARD, and SHIRLEY HARRISON | ) | |
| | ) | |
| Defendants. | ) | |

MASTER'S REPORT

Draft Report:  April 17, 2014
Exceptions Submitted:  December 8, 2014
Final Report:  February 20, 2015

David J. Ferry, Jr., Esquire and Brian J. Ferry, Esquire, of FERRY JOSEPH & PEARCE, P.A., Wilmington, Delaware; Attorneys for Plaintiff.

Thomas C. Marconi, Esquire of LOSCO & MARCONI, P.A., Wilmington, Delaware; Attorney for Defendants.

LEGROW, Master

A woman who intentionally misrepresented herself as the sole heir to her father's estate in order to avoid sharing the estate with her siblings and their issue now acknowledges her brother's right to a share of the estate, but contends the amount he is owed should be reduced by undocumented expenses she claims she incurred and a settlement her brother received from another defendant in this action. Because the defendant has not shown that the judgment should be reduced by either amount, her brother is entitled to one-sixth of the value of the estate and one-sixth of the proceeds from the sale of their parents' home, plus pre– and post–judgment interest and costs. This is my final report.

**BACKGROUND**

These are the facts as I find them after trial. The plaintiff, Jacob Harrison ("Jacob"),[1] and defendants, Roseann Dixon ("Roseann") and Shirley Harrison ("Shirley"), are siblings. Their parents, Remell ("Remell") and Clarence ("Clarence") Harrison, had six children between them who either survived them or predeceased them but left living issue.[2] Remell passed away on May 24, 2004.[3] Clarence passed away ten months later on April 7, 2005.[4] Both died intestate.[5] Roseann had power of attorney for

---

[1] I use the parties' first names for the sake of clarity. No disrespect is intended.
[2] Verified Am. Compl. ¶ 7.
[3] Joint Trial Exhibit (hereinafter "JX") 1.
[4] JX 2.
[5] JX 1, 2.

both Clarence and Remell.[6]  At the time of Clarence's death, he was the sole owner of a residence located at 2919 W. 3rd Street, Wilmington, Delaware 19805 (the "Property").[7]

Roseann was appointed as personal representative of both estates.[8]  When she applied to be appointed, and on several occasions thereafter, Roseann misrepresented to the Register of Wills that she was the sole next of kin for both of her parents.[9]  At trial, Roseann testified that she did this because her parents had instructed her to disinherit the other children.[10]  Based on her false statements identifying herself as sole heir, Roseann held herself out as the record owner of the Property and distributed her parents' estates according to what she believed their wishes to be, without regard for Delaware's intestate succession laws.[11]

The gross amount Roseann obtained through her misrepresentations is $179,371.69, consisting of:  (1) $130,991.62 in net proceeds from a personal injury settlement for Remell;[12] (2) $37,741.53 in net proceeds from the sale of the Property;[13] (3) $5,638.54 in net proceeds from a personal injury settlement for Clarence;[14] and (4) a $5,000.00 life insurance policy that was received for Clarence and used to pay his funeral

---

[6] Verified Am. Compl. ¶ 8.
[7] Pl.'s Answ. Br. to Def.'s Exceptions to the Master's Draft Report.  (hereinafter "Answer") at 3.
[8] *Harrison v. Dixon*, C.A. No. 7142-ML (April 17, 2014) (TRIAL TRANSCRIPT) (hereinafter "Tr.") at 190.
[9] JX 1-4.
[10] Tr. at 91.
[11] Tr. at 7.
[12] The settlement was received after Remell's and Clarence's deaths.  Although the settlement was for $200,000.00, this is the net figure after costs and attorneys' fees.  JX 12.
[13] JX 9.
[14] JX 12.

expenses.[15] Roseann cashed the checks for the personal injury settlement and the sale of the Property the same day she received them.[16] She testified that she shared half of the proceeds with her sister Shirley and kept half for herself.[17]

Roseann held the Property for over three years before selling it. She allowed friends and family to live in the home without paying rent or initiating eviction proceedings.[18] At some time in 2007 or 2008, she was contacted by Delaware Investment Services ("DIS") and ultimately sold the Property to DIS in August 2008 for $56,500.[19] Roseann sold the property as though she were its sole owner, based on her earlier sworn misrepresentations to the Register of Wills. Three months later, DIS sold the property to Nieaishia Dollard ("Dollard") for $130,000.00.[20] Jacob was unaware of any of these events until he discovered that his parents' home had been sold when he performed an online search.[21]

Jacob filed a verified complaint in December 2011 against Roseann, DIS, and Dollard alleging (1) fraudulent conveyance, (2) constructive trust, (3) a demand for an accounting, and (4) unjust enrichment. DIS and Dollard both answered the complaint and asserted crossclaims against Roseann. Roseann filed an answer in March 2012. Jacob filed an amended complaint in October 2012 naming Shirley as an additional

---

[15] Deposition of Roseann Dixon (June. 29, 2012) (hereinafter "Dixon Dep.") at 46-47.
[16] Tr. at 113, 120.
[17] Tr. at 113.
[18] Tr. at 128-29.
[19] JX 9. Although DIS bought the property for $56,500.00, the proceeds were reduced by the following expenses: (1) $16,966.32 to CitiFinancial, Inc. to pay off the mortgage; (2) $1,665.55 for settlement charges; (3) $52.70 for city taxes from July 1, 2008 to August 15, 2008; and, (4) $73.90 for county taxes from July 1, 2008 to August 15, 2008. *Id.*
[20] *Id.*
[21] *Id.*

Defendant. DIS and Dollard again answered and asserted crossclaims. A default judgment was granted against Shirley on December 14, 2012. Jacob reached a settlement with DIS and Dollard in the amount of $14,000.00, and these two defendants were dismissed with prejudice from the case on November 15, 2013.[22]

It is undisputed that Jacob is entitled to one-sixth of Clarence's estate under Delaware's intestacy laws; the dispute between the parties is whether that amount should be offset by certain expenses and the settlement Jacob received. Particularly, the parties dispute the amount of expenses to be deducted either from the estate or the proceeds from the sale of the Property. Roseann claims that she is entitled to deduct $40,888.00 in expenses related to the upkeep of the Property, even though she lacks receipts for most of these expenses.[23] The expenses include: $707.50 in Register of Wills costs, $10,574.03 for funeral expenses for Clarence and Remell, $17,000.00 for mortgage and utility payments from April 2005 to July 2008, $1,960.00 for water and sewer charges from January 2006 to December 2007, $3,991.47 for city and county property taxes, $130.00 for homeowners' insurance, $50.00 for a 2008 city code violation, $2,000.00 to pave the backyard, $2,975.00 for mold removal, and $1,500.00 for weekly lawn care from October 2005 to July 2008. Additionally, she claims that the $14,000.00 payment Jacob obtained in exchange for a release of claims against DIS and Dollard should be "credited" against

---

[22] *See* Joint Stipulation and Pre-Trial Order (hereinafter "Pre-Trial Order") ¶ 1 at 3; Tr. at 21.
[23] Def.'s Opening Br. in Supp. of her Exceptions to the Master's Draft Report (hereinafter "Def.'s Br.").

the judgment he receives.[24]  Strangely, although Roseann treats these as estate expenses, she did not sell the Property as part of the probate process.

At trial, I issued a draft report from the bench concluding that Jacob Harrison is entitled to one-sixth of the net estate and one-sixth of the proceeds from the Property in the total amount of $28,721.03, plus interest beginning in May 2006.  I deemed $6,290.26 of this judgment to be a joint and several judgment against Roseann Dixon and Shirley Harrison.[25]  Roseann filed exceptions to my draft report on May 5, 2014.  I heard oral argument on December 8, 2014.

**ANALYSIS**

There are three disputes between the parties:  (1) whether Jacob's recovery should be reduced by a share of the expenses related to the upkeep of the home, (2) whether Jacob's recovery should be reduced by the amount of his settlement with an independent party, and (3) whether Jacob is entitled to attorneys' fees and costs.

I.     **Reduction of Recovery**

a.  **Expenses**

Roseann argues that the Court should deduct from Jacob's recovery one-sixth of the $40,888.00 Roseann claims as estate and related expenses.[26]  Jacob argues that these expenses are not estate expenses, but instead relate to the maintenance of the home after both their parents passed away.  In addition, Jacob argues that even if these were estate

---

[24] Tr. at 132-33. Roseann argues that she should receive a $15,000.00 settlement credit, but the amount of the settlement was $14,000.00.

[25] Tr. at 200.

[26] Def.'s Br. at 11.

expenses, they were not timely submitted against the estate, they were not listed on Roseann's Register of Wills filings for their parents' estate, and there is no documentary evidence aside from Roseann's own testimony to support these expenses.[27] Roseann acknowledges her many mistakes, but argues that despite those errors, the Court's only concern should be correctly calculating the net estate and distributing the assets to the heirs in accordance with the intestacy statute.[28]

In this case, the only debts that properly can be deducted from the estate are the Register of Wills costs and the funeral expenses for Clarence Harrison because these are the only estate expense of which Roseann can show proof. As to the remainder of the expenses, there are at least five reasons why they cannot be used to reduce Jacob's recovery.

First, whether these are estate expenses or expenses incurred by a joint owner of the Property, Roseann did not provide any proof beyond her own testimony as to the amount of those expenses. In fact, she herself is not certain of the magnitude of those expenses because she kept no receipts, dealt primarily in cash, and retained no copies of the bills.[29] She contends that circumstantial evidence proves that someone was paying the mortgage and various expenses for the Property, and argues that it was her. The fact, however, that *someone* was paying for these expenses does not mean that Roseann was that person. It is equally possible that the mortgage was paid by the persons Roseann allowed to live in the home. Nor does it mean that the expenses totaled $40,888.00.

---

[27] Answer at 15.
[28] Def.'s Br. at 11.
[29] Tr. at 84, 115.

6

Given her numerous sworn misrepresentations, Roseann's testimony is not sufficient evidence on this issue.

Second, even if there was evidence to establish these expenses, most if not all of these expenses relate to the upkeep of the home after Clarence and Remell passed away. Under Delaware law, once Clarence died, ownership of the property passed by operation of law to his heirs. Roseann, however, asserted sole ownership of the property through her misrepresentations to the Register of Wills and did not sell the Property for three years. In that time, while failing to apprise the other co-owners of their interest, Roseann did not maintain the Property. In fact, the final residents of the home only left when it became uninhabitable because of overgrown mold caused by broken pipes.[30] In other words, in the three years she controlled the Property, Roseann allowed it to become a wasting asset. By her own words, the home was in such "disrepair that nobody could live in it."[31] Because the expenses Roseann claims were not incurred in her capacity as administrator of her parents' estates and did not increase the value of the Property, Roseann cannot claim that they are estate expenses and cannot claim that she is entitled to set-off the expenses against the other intestate heirs to the Property.[32]

Similarly, Roseann cannot ask Jacob to contribute to the expenses for the upkeep of a home from which he was specifically excluded. Although Roseann argues Jacob

---

[30] Tr. at 130.
[31] Tr. at 130-31.
[32] *See* 25 *Del. C.* § 733; *see also Wilson v. Lank*, 107 A. 772, 773 (Del. Ch. 1919) (the measure of cotenants' right to compensation is not the cost of the improvement, but the enhanced value of the premises).

7

never expressed an interest in living in the residence,[33] the record shows Jacob never had the opportunity to do so because he was not aware of his interest. Instead, Roseann asserted sole authority over the home and misrepresented that authority in various legal documents. She retained possession of the residence for over three years before finally selling it. She alone enjoyed sole access to the Property and cannot now claim that another owner, whom she intentionally excluded, must contribute to expenses associated with the upkeep of this home.[34]

The final two reasons Roseann cannot offset these expenses against Jacob's award are interrelated: to the extent the expenses could be considered estate expenses, they were not listed on the first and final accounting that Roseann herself filed and Roseann did not seek timely reimbursement for them. Because this action comes ten years too late, any reimbursement she may seek is barred by statute.[35]

### b. The Settlement and the Application of the Collateral Source Rule

Roseann next argues Jacob's award should be reduced by the amount that he received from his settlement with DIS and Dollard. She believes Jacob's recovery should be reduced by this amount because he otherwise would receive a windfall. Jacob argues that the settlement with DIS and Dollard is a "collateral source" that should not reduce the judgment to which he is entitled.

---

[33] *Harrison v. Dixon*, C.A. No. 7142-ML (Dec. 8, 2014) (TRANSCRIPT) (hereinafter "Oral Arg.") at 15.
[34] *See Matter of Charles B. McCaffrey*, 1995 WL 347794, at *1 (Del. Ch. May 31, 1995) (cotenant in sole possession of property is not entitled to contribution from other cotenants for repairs to the property). Although a cotenant typically is entitled to contribution for mortgage payments and taxes, Roseann has not shown the extent of those payments or that she –rather than a third party– actually made them.
[35] 12 *Del. C.* § 2102.

Under the common law doctrine known as the collateral source rule, when an independent source compensates an injured party, a tortfeasor has no right to mitigate his damages on the basis of those payments.[36] A person "deemed legally responsible to another cannot claim the benefit of the ability of the injured party to recover [ ] from a third party expenses related to [the] injury."[37] The rule is quasi punitive and is based on the rationale that the tortfeasor has no right to benefit from money received because of the other party's injury.[38] "The collateral source rule resolves what may be competing equities in favor of the innocent injured plaintiff receiving a windfall, rather than an admitted or adjudged tort-feasor bearing less than the full cost of his or her negligent conduct."[39] In short, if the choice is between a victim and a tortfeasor receiving a windfall, the law favors the victim.

Roseann argues the collateral source rule does not apply because its reach is limited to tort claims and Jacob's claims do not sound in tort.[40] This argument both ignores the fiduciary obligations Roseann undertook as administrator of the estate and misconstrues the claims Jacob asserted against her. An action for a breach of fiduciary

---

[36] *Yarrington v. Thornburg*, 205 A.2d 1, 2 (Del. 1964).

[37] *Miller v. State Farm Mut. Auto. Ins. Co.*, 993 A.2d 1049, 1053 (Del. 2010) (citing *Guy J. Johnson Transp. Co. v. Dunkle*, 541 A.2d 551, 553 (Del.1988)).

[38] *Mitchell v. Haldar*, 883 A.2d 32, 38 (Del. 2005); *Yarrington*, 205 A.2d at 2.

[39] *Med. Ctr. of Delaware, Inc. v. Mullins*, 637 A.2d 6, 10 (Del. 1994) (citing *State Farm Mut. Auto. Ins. Co. v. Nalbone,* 569 A.2d at 71, 75 (Del. 1980)).

[40] Roseann also does not contend that she is joint tortfeasor with DIS or Dollard. Under 10 *Del. C.* § 6304, known as the Uniform Contribution Among Tortfeasors Act, when one joint tortfeasor reaches a settlement and is dismissed from a case, the liability of the remaining tortfeasor will be reduced by the amount of the settlement. Because Roseann does not contend that she is a joint tortfeasor with DIS or Dollard, and there was no judicial determination of that fact, I have not analyzed the application of that Act.

9

duty is characterized as a tort.[41] An administrator of an estate owes fiduciary duties to the heirs or beneficiaries.[42] Although not styled as a breach of fiduciary duty, Jacob's claim against Roseann for fraudulent conveyance[43] is premised on her misrepresentations and faithless conduct as a fiduciary and therefore is much more akin to a fiduciary claim than contractual claim. I therefore conclude that the collateral source rule applies and bars Roseann from claiming the benefit of the settlement. To conclude otherwise would provide Roseann with a windfall.[44]

## II.     Attorney's Fees

Jacob also seeks his attorney's fees associated with defending the exceptions to my draft report. In 1796, the United States Supreme Court disallowed an award of attorneys' fees to the winning party under what has commonly been referred to as the "American Rule."[45] Under the American Rule and Delaware law, litigants normally are responsible for paying their own attorneys' fees.[46] This rule, however, is not absolute. One of the recognized exceptions is when a party engages in bad faith litigation.[47]

Delaware courts will award attorneys' fees only when a party is engaged in bad faith conduct such as unnecessarily prolonging or delaying litigation, falsifying records,

---

[41] Deborah A. DeMott, *Breach of Fiduciary Duty: On Justifiable Expectations of Loyalty and Their Consequences,* 48 ARIZ. L. REV. 925, 926 (2006). *See also In re Rural Metro Corp.*, 88 A.3d 54, 98 (Del. Ch. 2014) ("A breach of fiduciary duty is an equitable tort").

[42] *See Mitchell v. Reynolds*, 2009 WL 132881, at *9 (Del. Ch. Jan. 6, 2009).

[43] Verified Am. Compl. ¶ 16-23.

[44] Even if the settlement could offset a portion of Jacob's recovery, it only could offset the portion of the judgment arising from the sale of the Property, or $6,290.26. Roseann can articulate no reason why Jacob's settlement with the individuals who purchased the Property should offset an award unrelated to the Property.

[45] *Arcambel v. Wiseman*, 3 U.S. 306, 306 (1796).

[46] *See e.g., Mahani v. Edix Media Gp., Inc.*, 935 A.2d 242, 245 (Del. 2007).

[47] *See e.g., Johnston v. Arbitrum (Cayman Islands) Handels AG*, 720 A.2d 542, 546 (Del. 1998).

or knowingly asserting frivolous claims.[48] The court will not casually award attorneys' fees under the bad faith exception.[49] This exception is used only in extraordinary circumstances to deter abuse of the judicial system.[50] Just because a claim is not a "winning" claim does not mean that it reaches the level of bad faith that entitles the other side to attorneys' fees.[51] Under this stringent standard, I do not find that Roseann's exceptions were an attempt to prolong litigation, assert frivolous claims, or file any false documents with the Court. Although the exceptions did not carry the day, they were not entirely without merit.

### III. Motion for Costs

Jacob also requested an award of costs in the amount of $2,134.20 to be entered against Roseann and Shirley jointly and severally.[52] He requests $1,177.00 for LexisNexis filing charges, $524.00 in court costs, $216.00 for Reed Elsenier and LexisNexis per pages costs, $150.00 for investigative services, $150.00 for exhibit storage and trial charges, $103.33 for service of process costs, $57.12 for the cost to prepare exhibit books, and $5.75 for the cost of postage.[53] Roseann argues that the costs for postage, preparation of exhibit books, and exhibit storage and trial charges are not "costs" within the meaning of the Court's rule. Additionally, Roseann argues that

---

[48] *Montgomery Cellular Holding Co. v. Dobler*, 880 A.2d 206, 227-28 (Del. 2005) (quoting *Johnston*, 720 A.2d at 546).

[49] *Nagy v. Bistricer*, 770 A.2d 43, 64 (Del. Ch. 2000).

[50] *Montgomery Cellular Holding Co.*, 880 A.2d at 227.

[51] *See P.J. Bale, Inc. v. Rapuano*, 888 A.2d 232 (Del. 2005).

[52] Although Jacob initially requested $2,841.65, during oral argument Jacob withdrew his request for $557.45, which represented the cost of a copy of Roseann's deposition transcript. Oral Arg. at 27.

[53] *See* Mot. to Assess Costs Against Defs., Ex. A.

because she is only one of four defendants named in the amended complaint, her liability should be reduced to only one-quarter of recoverable costs.

According to Court of Chancery Rule 54(d), Jacob, as the prevailing party, is entitled to ordinary costs as a matter of course. Generally, costs are assessed against the unsuccessful party to a proceeding unless justice requires otherwise.[54] For purposes of Rule 54, costs are those "… incidental damages awarded by law to reimburse the prevailing party for expenses necessarily incurred in the assertion of his rights in court."[55] Roseann correctly states that Delaware courts have refused to award costs for items such as photocopying and transcripts,[56] but the costs she challenges cannot fairly be placed in that category.

In *All Pro Maids, Inc. v. Layton*, on which Roseann relies, an employment agreement between the two parties stated that "employee will be responsible for all *court costs* (emphasis added) and attorney's fees."[57] Interpreting that language, the Court explained that "[c]ourt costs[] usually refe[r] to costs associated with filing papers in court, obtaining service and so on."[58] In addition, the Court interpreted "court costs" to be narrower in scope than the term "costs" in Rule 54. In the present case, the contested exhibit storage and trial charges fall into even this narrower category of "court costs." In

---

[54] *See Canon v. Liberman*, 1980 WL 81862, at *1 (Del. Ch. Jan. 30, 1980); *see also In re First Account of Equitable Trust Co.*, 30 A.2d 271 (Del. Ch. 1943).
[55] *Peyton v. William C. Peyton Corp.*, 8 A.2d 89, 91 (Del. 1939).
[56] Answ. To Mot. To Assess Costs ¶ 3 (citing *All Pro Maids, Inc. v. Layton*, 2004 WL 3029869, at *3 (Del. Ch. Dec. 20, 2004), *aff'd* 880 A.2d 1047 (Del. 2005)).
[57] *All Pro Maids, Inc. v. Layton*, 2004 WL 3029869, at *1 (Del. Ch. Dec. 20, 2004), *aff'd* 880 A.2d 1047 (Del. 2005).
[58] *Id.*

fact, this cost was assessed by the court itself.[59] As for the contested postage and costs to prepare exhibit books, there has been no evidence presented that the costs were not incurred as part of Jacob's assertion of his claims in court.

Finally, Roseann's argument that as only one of the four defendants she should only be assessed one-fourth of the costs is equally without merit. First, DIS and Dollard settled before trial and therefore cannot be assessed costs. There are, therefore, two defendants to this action whom I find to be jointly and severally —not severally— liable. Accordingly, I recommend that the Court award Jacob costs in the amount of $2,134.20 to be entered against Roseann and Shirley jointly and severally.

**CONCLUSION**

For the foregoing reasons, I recommend that the Court enter an order requiring Roseann to pay Jacob $28,721.03, plus costs and pre-judgment and post-judgment interest compounded quarterly at the legal rate. This is my final report and exceptions may be taken in accordance with Rule 144.

Respectfully submitted,

/s/ *Abigail M. LeGrow*
Master in Chancery

---

[59] Mot. To Assess Costs Against Defs., Ex. A.

13